IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ANTHONY CRAIG HARRISON, | § |
| | § |
| Plaintiff, | § |
| | § Civil Action No. 3:13-CV-2851-D |
| VS. | § |
| | § |
| CAROLYN W. COLVIN, ACTING | § |
| COMMISSIONER OF SOCIAL | § |
| SECURITY, | § |
| | § |
| Defendant. | § |

MEMORANDUM OPINION

Plaintiff Anthony Craig Harrison ("Harrison") brings this action under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits under Title II of the Act and supplemental security income under Title XVI of the Act. For the reasons that follow, the court affirms in part and vacates and remands in part the Commissioner's decision.

I

On September 8, 2010 Harrison filed a Title II application for a period of disability and disability insurance benefits. He also filed a Title XVI application for supplemental security income. In both applications, he alleged a disability beginning February 20, 2007. His application was denied initially and on reconsideration. Following a hearing, the administrative law judge ("ALJ") found that Browning is not disabled.

The ALJ followed the five-step sequential process prescribed in 20 C.F.R. §

404.1520(a)(4) (2014).   At step one,[1] he concluded that Harrison has not engaged in

substantial gainful activity since February 20, 2007 (the alleged onset date).   At step two, the

ALJ determined that Harrison has the following severe impairments: degenerative joint

disease, degenerative disc disease, asthma, and chronic feet pain.   At step three, the ALJ

found that Harrison does not have an impairment or combination of impairments that meets

or medically equals any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.   The

ALJ found that Harrison has the following residual functional capacity ("RFC"):

> the claimant has the [RFC] to perform light work as defined in
> 20 CFR 404.1567(b) and 416.967(b).   The claimant can stand or
> walk 2[]hours in an 8 hour day and sit for 6 hours in an 8 hour
> day.   The claimant is limited to occasional climbing of stairs and
> ramps but never any climbing of ladders, ropes, or scaffolds; can
> perform occasional stooping, kneeling, crouching, and crawling;
> and avoid exposure to dusts, poor ventilation, odors, or gases.

R. 14 (bold font omitted).   At step four, the ALJ found that Harrison is unable to perform any

past relevant work.   At step five, after questioning a vocational expert ("VE"), the ALJ found

that, considering Harrison's age, education, work experience, and RFC, there are other jobs

that exist in significant numbers in the national economy that Harrison can perform,

including telemarketer, document preparer, and charge account clerk.   The ALJ therefore

found that Harrison has not been under a disability, as defined in the Act, from February 20,

2007 through the date of the ALJ's decision.   He denied Harrison's application for a period

of disability and disability insurance benefits and his application for supplemental security

---

[1]Prior to reaching this conclusion, the ALJ found that Harrison meets the insured
status requirements of the Act through December 31, 2012.

income on the basis that he is not disabled under the Act.

Harrison sought review by the Appeals Council, which denied his request, and the ALJ's decision became the final decision of the Commissioner. Harrison now seeks judicial review based on the following contentions: (1) the ALJ did not properly weigh the medical opinion of his orthopaedic surgeon, Ronnie D. Shade, M.D. ("Dr. Shade"), that Harrison will be absent between 6 and 15 days each year; (2) the ALJ did not evaluate the side effects of Harrison's pain medication and, accordingly, the ALJ's RFC finding, which includes no mental limitations of any kind, is not supported by substantial evidence; (3) the ALJ failed to evaluate Harrison's obesity in the manner required by law; and (4) the ALJ did not follow the correct legal standards in assessing the credibility of Harrison's testimony about his pain and subjective symptoms because he (i) inferred the absence of pain from his lay observations of Harrison's body mechanics at the hearing; (ii) found that Harrison has no "deformity in any extremity or joint" despite evidence that Harrison has flat feet, hallux valgus deformities in both feet, and "hammer toes"; (iii) found that Harrison does not require the use of an assistive device to ambulate even though the VA has prescribed the use of a cane, Harrison wears braces on his knee four times a week, and his podiatrist has created custom orthodics that Harrison places inside his shoes and inferred that Harrison's not needing an assistive device to ambulate supported the inference that Harrison's lower extremities are not too painful to preclude full time work; and (iv) found that imaging studies of Harrison's back, neck, knees, and feet have not revealed any significant deficits.

II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir.1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984) (citations omitted). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted). Even if the court

- 4 -

should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for the court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether an applicant is disabled, the ALJ follows a five-step sequential analysis. *See, e.g., Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the ALJ finds that the claimant is disabled or is not disabled at any step in the analysis, the analysis is terminated. *Id.* Under the five-step sequential inquiry the Commissioner considers whether (1) the claimant is presently engaged in substantial gainful activity, (2) the claimant's impairment is severe, (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R. § 404.1520, Subpart P, Appendix 1, (4) the impairment prevents the claimant from doing past relevant work, and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *See, e.g., Leggett*, 67 F.3d at 563-64 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520(a)(4). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per

curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact.  The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)).  "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557.  "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id*.  Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced." *Id*.  The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

Harrison first contends that the ALJ did not properly weigh the medical opinion of Harrison's orthopaedic surgeon, Dr. Shade, who concluded that Harrison will require work absences of between 6 and 15 days each year due to flare-ups in his degenerative knee impairments.

A

Dr. Shade opined on August 10, 2007, in a "Certification of Health Care Provider" ("August 2007 Certification") under the Family and Medical Leave Act, that it will "be necessary for [Harrison] to take work only intermittently or to work on a less than full schedule" due to the condition of both of his knees.  R. 427.  He further quantified the absences that Harrison would require, opining that he "may experience flare up 2 to 3 times per year and may be incapacitated 3-5 day[s] per episode of flare-up depending on severity." *Id.*  Dr. Shade opined that, on these occasions, Harrison should attempt "[n]o work of any kind," and that it would be "necessary for [Harrison] to be absent from work for treatment." *Id.* at 428.

Harrison posits that the ALJ failed to describe or weigh Dr. Shade's opinion in his decision; failed to incorporate absenteeism related to the care of Harrison's knee flare-ups in formulating the RFC, which provides for no work absences at all; and failed to explain why he did not accommodate the need for such absences.  Harrison argues that, as a result, it is very difficult to review the ALJ's findings under the substantial evidence test.  He further contends that, assuming knee-related absences were the only ones he ever required, if he was annually absent at the low end of the range—2 episodes of 3 days each—this would eliminate roughly half of all work absences most employers permit, and if he was annually absent at the high end of the range—3 episodes of 5 days each—this would preclude full-time employment.  Accordingly, Harrison argues that, at the very least, the ALJ should have informed the VE of Harrison's need for 6 to 15 absences each year when the ALJ posed the

key hypothetical question at the hearing.

The Commissioner responds by citing medical records that post-date Dr. Shade's August 2007 Certification, in which Dr. Shade released Harrison to light duty work and stated that Harrison was only limited in the future from job activities requiring prolonged standing and walking, climbing, stooping, or bending.  The Commissioner argues that the RFC assessment includes the limitations that Dr. Shade noted in his subsequent evaluations and recommendations; that the ALJ clearly considered and discussed in his decision the relevant medical evidence concerning Harrison's knee impairments, finding them to be a severe impairment that limited his ability to stand or walk to only 2 hours in an 8-hour workday, with only occasional climbing of stairs, stooping, kneeling, and crawling; and that the ALJ properly relied on Dr. Shade's more recent recommendations in finding that Harrison is not disabled, but is capable of performing a restricted range of light work.  The Commissioner maintains that, because the ALJ found that Dr. Shade's opinion that Harrison would have to miss between 6 and 15 days per year was inconsistent with other record evidence, including Dr. Shade's subsequent opinions, the ALJ had no duty to include this limitation in the hypothetical question posed to the VE.

B

The ALJ "is responsible for assessing the medical evidence and determining the claimant's [RFC]."  *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985).  Although an evaluation by the claimant's treating physician should be accorded great weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and

is not inconsistent with . . . other substantial evidence," 20 C.F.R. § 404.1527(c)(2), "[t]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez*, 64 F.3d at 176 (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (citation omitted)).  Although the ALJ must adequately explain the reasons for his decision, the ALJ's RFC decision can be supported by substantial evidence even if he does not specifically discuss all the evidence that supports his decision or all the evidence that he rejects. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

In this case, substantial evidence supports the ALJ's RFC determination as it relates to Harrison's degenerative knee impairments.  Dr. Shade stated in the August 2007 Certification that Harrison's degenerative knee impairments "*may*" cause a flare up 2 to 3 times per year and that during a flare-up, Harrison "*may* be incapacitated" for 3 to 5 days. R. 427 (emphasis added).  On September 18, 2007 Dr. Shade released Harrison to "light duty." *Id*. at 424.  In a September 20, 2007 "Letter of Causal Relationship," Dr. Shade opined that Harrison "will be limited in the future with job activities which require prolonged standing and walking, climbing, stooping, and bending," with no mention of expected absences. *Id*. at 423.  Notes from follow-up appointments over the next few months indicated that Harrison was to continue being off work, with Dr. Shade conditionally releasing him to return to work on November 19, 2007 with the restriction "no prolonged standing and walking." *Id*. at 419.  Subsequent follow-up notes indicate that Harrison could perform "light duty" work, and they do not mention the requirement of any absences.

In formulating the RFC, the ALJ cited Dr. Shade's September 2007 "Letter of Causal

Relationship," in which Dr. Shade opined that Harrison "would be limited with job activities that required prolonged standing and walking, climbing, stooping, and bending." *Id*. at 15. He also noted that he was affording "great weight" to Dr. Shade's opinion. *Id.* at 17. The ALJ clearly incorporated Dr. Shade's opinions into the RFC, limiting Harrison to standing or walking for 2 hours in an 8-hour workday, sitting for 6 hours in an 8-hour workday, and to occasional stooping, kneeling, crouching, and crawling. Although Dr. Shade opined in August 2007 that Harrison "may" experience flare-ups 2 to 3 times per year, and that each flare-up "may" last 3 to 5 days, subsequent medical records releasing Harrison to work with light duty limitations do not include any limitations on his ability to work full time or refer to any perceived need for absences in the event of a flare-up. Accordingly, substantial evidence supports the ALJ's RFC determination as it relates to Harrison's knee-related impairments.

The court also holds that the ALJ was not required to include in the questions posed to the VE a potential need for 6 to 15 absences annually. "[A]n ALJ need only incorporate into . . . hypothetical questions those claimed disabilities 'supported by the evidence and recognized by the ALJ.'" *Hernandez v. Astrue*, 269 Fed. Appx. 511, 515 (5th Cir. 2008) (per curiam) (quoting *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002)). "The ALJ was thus entitled to rely upon a hypothetical question that included a RFC with only those limitations he found credible and supported by the record." *Id.* Furthermore, the ALJ's failure to include in the hypothetical a need for 6 to 15 absences annually is not reversible error where, as here, the "claimant or his representative is afforded the opportunity to correct

deficiencies in the [ALJ's] question by mentioning or suggesting to the [VE] any purported defects in the hypothetical questions (including additional disabilities not recognized by the [ALJ's] findings and disabilities recognized but omitted from the question)." *Wise v. Barnhart*, 101 Fed. Appx. 950, 951 (5th Cir. 2004) (per curiam) (quoting *Bowling*, 36 F.3d at 436); *see also, e.g ., Gardner v. Massanari*, 264 F.3d 1140, 2001 WL 822457, at *2 (5th Cir. June 18, 2001) (per curiam) (unpublished table decision) ("[Plaintiff] does not dispute that his non-attorney representative was allowed to cross-examine the VE regarding the ALJ's hypothetical question.  Thus, even assuming, *arguendo*, that the ALJ's hypothetical question was deficient in the respects urged on appeal, affording [the claimant's] representative an opportunity to correct any perceived deficiencies precludes a finding of reversible error.").  In this case, Harrison's attorney was afforded an opportunity to, and did, cross-examine the VE in order to correct deficiencies in the ALJ's question by mentioning or suggesting to the VE any purported defects in the hypothetical.  Accordingly, any error in the ALJ's hypothetical posed to the VE is not reversible.

## IV

The court next considers Harrison's contention that the ALJ committed prejudicial error when he failed to consider Harrison's obesity at any of the five steps despite overwhelming evidence that he is obese.

### A

Harrison contends that, at the time of the hearing, he weighed 275 pounds and had a body-mass index of 34.4, which is well above the obesity cutoff of 30.0.  He also cites

evidence that his doctors have repeatedly diagnosed him with obesity.  He argues that, because the ALJ's decision does not find obesity to be among his medically determinable impairments, yet also does not find that he is not obese, it is impossible to tell which category—"overweight" or "obese"—the ALJ found him to be in.  He asserts that it is critical to a meaningful review of the RFC finding that the court be able to distinguish between these two situations because, in the case of claimants who are merely "overweight," ALJs are barred from taking their excess weight into account when assessing the RFC, whereas ALJs are required to take into account the effects of excess weight in claimants who have a medically determinable impairment of obesity.  Harrison contends that the ALJ failed to comply with the requirement that he explain how he reached his conclusion on whether obesity caused any physical or mental limitations.  He argues that this error is not harmless because Harrison's doctors have advised him that his excess weight is exacerbating his musculoskeletal ailments.

The Commissioner responds that Harrison did not list obesity as an impairment in any of his applications, and that he testified at the hearing that he did not consider himself obese. She posits that, although it appears that the ALJ did not specifically analyze Harrison's obesity, Harrison does not point to any record evidence indicating that his alleged obesity caused any work-related limitations beyond those already found by the ALJ in his RFC determination, which included limiting Harrison to light work with only occasional climbing of stairs and ramps and no climbing of ladders, ropes, or scaffolds.  Accordingly, she maintains that any error that the ALJ made is harmless.

- 12 -

B

The ALJ's opinion states that he considered all of Harrison's symptoms to the extent they were consistent with the evidence in the record.  Although the ALJ did not specifically discuss Harrison's obesity, he did not commit reversible error in declining to discuss how Harrison's weight affected his other impairments or his RFC.  "Although the ALJ did not explicitly articulate or rely on any cumulative effects of [Harrison's] obesity, the record indicates that h[is] obesity was factored into the RFC determination." *Brown v. Astrue*, 2009 WL 64117, at *4 (N.D. Tex. Jan. 12, 2009) (Fitzwater, C.J.).  The ALJ adopted the suggestions of treating physicians who were aware of Harrison's obesity.  *See Gannon v. Astrue*, 2008 WL 4490738, at *9 (N.D. Tex. Aug. 11, 2008) (Stickney, J.), *rec. adopted*, 2008 WL 4490738, at *1 (N.D. Tex. Oct. 3, 2008) (Godbey, J.).  And Harrison testified as to his height and weight at his administrative hearing.  In fact, the ALJ specifically asked Harrison whether he considered himself obese, and Harrison responded "No."  R. 33.[2]  The ALJ noted in his decision that surgery had been recommended for Harrison's back but that his doctor told him he must first lose weight.  Thus substantial evidence supports the conclusion that the ALJ properly considered Harrison's obesity in determining his RFC.

Moreover, Harrison has not shown that he was prejudiced by the ALJ's failure to mention Harrison's obesity in his decision.  The ALJ limited Harrison's RFC to "'light

---

[2]In addition, the ALJ asked Harrison several questions related to his "weight problem," including whether he had taken any medication prescribed for his weight problem, whether he had had any operations, such as lap band or gastric bypass, and whether he had ever participated in any type of weight loss program.  R. 42.

- 13 -

capacity' work, which would likely be consistent with any obesity-related limitations." *Williams v. Astrue*, 2010 WL 517590, at *4 (N.D. Tex. Feb. 11, 2010) (Fitzwater, C.J.). He also limited Harrison to standing or walking for 2 hours and sitting for 6 hours of an 8-hour workday and to only occasional climbing of stairs and ramps and no climbing of ladders, ropes, or scaffolds. Harrison does not indicate what additional limitations he required as a result of obesity. In reaching his decision, the ALJ considered the limitations mentioned in Harrison's medical records, and there is substantial evidence to support the ALJ's determination regarding Harrison's RFC. Accordingly, even if the ALJ erred in not specifically discussing Harrison's obesity in his decision, the error is not reversible. *See, e.g., Musgrove v. Astrue*, 2009 WL 3816669, at *8 (N.D. Tex. Nov. 13, 2009) (Kaplan, J.) (citing *Parker v. Barnhart*, 431 F.Supp.2d 665, 674 (E.D. Tex. 2006)) (holding that when ALJ fails to follow social security ruling, plaintiff seeking judicial review must also demonstrate prejudice resulting from that error to be entitled to relief).

V

Harrison challenges the ALJ's assessment of his credibility, arguing that the ALJ made several errors at steps two through five and that the sum of these errors in assessing Harrison's credibility warrants remand.

A

Harrison first argues that, in discounting Harrison's credibility, the ALJ impermissibly relied on his own observations of Harrison's demeanor and behavior. He contends that the ALJ is not qualified as a layman to draw medical inferences about the severity of an ailment

- 14 -

based on his observations, and that under *Wingo v. Bowen*, 852 F.2d 827, 831 n.2 (5th Cir. 1988), such observations are irrelevant and do not constitute substantial evidence.

The Commissioner responds that the ALJ properly considered Harrison's credibility and required subjective complaints to be corroborated, at least in part, by objective evidence, and that judgment as to the credibility of Harrison's testimony is within the province of the ALJ. The Commissioner also maintains that Harrison has taken the ALJ's comments out of context, because the ALJ emphasized that his observations were only one factor among many that he relied on in reaching a conclusion regarding Harrison's credibility, and the ALJ therefore was neither making a disability determination based on his observations nor relying on his observations to determine the severity of Harrison's ailments or ability to engage in gainful activity.

In *Wingo* the panel stated that "[t]he fact that an applicant does not appear to be experiencing severe pain or other symptoms at the hearing is not substantial evidence from which to make a disability determination." *Id.* But in *Villa v. Sullivan*, 895 F.2d 1019 (5th Cir. 1990), the Fifth Circuit explained that "[w]hile *exclusive reliance upon demeanor* in credibility determinations is inappropriate, it is not reversible error for an ALJ *to consider demean*or as one of several factors in evaluating a claimant's credibility." *Id.* at 1024 (emphasis added) (citations omitted). Here, the ALJ clearly relied on objective medical evidence in determining Harrison's RFC and assessing his credibility. *See* R. 17 ("The *medical records* discussed above do not provide a basis to support the level of severity alleged by the claimant." (emphasis added)); *id.* at 18 ("After careful consideration of the

- 15 -

*medical opinions of record*, I find that the claimant's medically determinable impairments cannot reasonably be expected to produce the symptoms to the degree alleged by the claimant." (emphasis added)); *id.* ("The claimant's statements concerning the intensity, persistence and limiting effects of [his symptoms] have been determined to diminish the capacity for basic work activities only to the extent to which they can reasonably be accepted as consistent with the *objective medical* and other evidence." (emphasis added)). And the ALJ emphasized that, in making his credibility and RFC determinations, his "observations [were] *only one factor among many* being relied on in reaching a conclusion." *Id.* at 17-18 (emphasis added). Accordingly, "[s]ince [Harrison's] demeanor was but one of the grounds upon which the ALJ based its determination that [Harrison's] complaints were not credible, [Harrison's] argument is without merit." *Taylor v. Apfel*, 1999 WL 130172, at *1 (5th Cir. Feb. 12, 1999) (per curiam) (citing *Villa*, 895 F.2d at 1024).

## B

Harrison next argues that the ALJ's finding, while assessing Harrison's credibility, that there is no objective evidence of deformity in any extremity or joint is mistaken because the joints in Harrison's feet were affected by the following: he is flat-footed, he has hallux valgus deformities (bunions), and he has "hammer-toe" deformity in his feet. Harrison contends that the ALJ's credibility assessment shows that the ALJ did not have the necessary understanding of the deformities afflicting the joints in Harrison's feet, therefore compounding the error the ALJ made, at step two, in concluding that Harrison does not have any medically determinable impairment affecting his feet. He contends that the ALJ's

finding that Harrison has "chronic feet pain" is a finding of a symptom, not an impairment.

The Commissioner responds that the ALJ clearly considered Harrison's feet-related complaints, his right foot surgery, his hallux valgus, the unremarkable X-rays of his feet, and his Veterans Administration disability rating for his right foot.  In formulating the RFC, the ALJ stated that he had considered all of Harrison's impairments that could cause pain or other symptoms and limited Harrison to a restricted range of light work.  The Commissioner argues that the ALJ clearly considered Harrison's feet impairments in steps two through five and that Harrison does not point to any medical evidence demonstrating that his feet impairments caused limitations more severe than the ALJ included in his RFC.  The Commissioner also maintains that, once the ALJ moves past the severity finding at step two of the sequential process, the severity standard is generally no longer material since the ALJ considers the combined impact of all of the claimant's impairments (regardless of whether they are the result of impairments labeled "severe" or "non-severe") at steps four and five of the sequential process.

The court notes at the outset that, to the extent Harrison intends to rely on the ALJ's finding regarding his feet impairments to challenge the ALJ's credibility assessment, credibility determinations are generally left to the discretion of the ALJ and will not be disturbed unless they are impermissibly vague or unsupported by the record.  *McGowan v. Astrue*, 2009 WL 2614487, at *4 (N.D. Tex. Aug. 25, 2009) (Fitzwater, C.J.).  Regardless, the ALJ's decision demonstrates that he took Harrison's feet-related impairments into account when performing his analysis.  The ALJ specifically noted that Harrison alleged

disability due to feet problems; that during Cecilier Chen, M.D.'s ("Dr. Chen's") April 2011 examination, inspection of Harrison's right foot "showed evidence of previous surgical scar, but there was no redness, swelling, or tenderness present in his feet"; and that Harrison was evaluated in July 2011 for bilateral feet pain and that "[a]n inspection of his feet showed mild hallux varus of the right foot and hallux valgus of the left foot." R. 16. In making his RFC finding, the ALJ stated that he "h[ad] considered all symptoms," *id.* at 14, and, as noted above, he limited Harrison to "light work" with various other restrictions. The record supports the conclusion that the ALJ took Harrison's feet-related impairments into account when determining his RFC, and the ALJ's failure to include these impairments among the "severe" impairments listed at step two does not undermine the ALJ's credibility determination at step four.

C

Harrison argues that the ALJ's finding that he does not require the use of an assistive device to ambulate is factually incorrect[3] because it ignores the bariatric cane he was prescribed, the custom orthodics he wears in his shoes, and the braces on both of his knees. Harrison asserts that the ALJ's finding regarding the use of assistive devices to ambulate "implies that he is not often in significant pain." P. Br. 23. The Commissioner responds that Harrison has taken the ALJ's conclusion regarding the use of assistive devices out of context. She posits that the ALJ did not state that Harrison was not in significant pain, but instead

---

[3]Although Harrison argues that this statement is "factually incorrect," P. Br. 24, he also appears to concede that this statement may have been "accurate," *id.* at 23.

concluded that the evidence did not support Harrison's allegations that his conditions were disabling. The Commissioner next argues that the ALJ properly concluded that Harrison could ambulate unassisted because he does not require the use of a walker, two crutches, or two canes, and that Harrison does not cite objective medical evidence demonstrating that his orthodics or the cane caused limitations more severe than the ALJ found in the RFC, or that his orthodics or the cane prevent him from performing the work that the ALJ found he could perform at step five.

In the context of determining Harrison's RFC, the ALJ found that Harrison's "gait and station is normal, he does not require the use of an assistive device to ambulate, and he is neurologically intact." R. 17. The ALJ noted, however, that Harrison wears knee braces and that he is only able to walk about one block due to pain in his knees. The ALJ also limited Harrison to "light work," walking or standing for 2 hours in an 8-hour workday, sitting for 6 hours in an 8-hour workday, and occasional climbing of stairs and ramps, with no climbing of ladders, ropes, or scaffolds. Harrison neither argues nor presents evidence to suggest that his use of custom orthodics or knee braces 3-4 days per week requires a different RFC formulation or that these assistive devices would prevent him from performing the type of work that the ALJ found at step five he was able to perform. Thus assuming *arguendo* that the ALJ erred in finding that Harrison does not require the use of an assistive device to ambulate, he has not shown prejudicial error. Moreover, to the extent Harrison argues that the ALJ's statement that he does not require the use of an assistive device to ambulate is

factually incorrect because it fails to take into account the bariatric cane he was prescribed,[4] Harrison's being prescribed a bariatric cane cannot be a basis for attacking the ALJ's credibility determination because Harrison was not prescribed the cane until April 2012 (after his hearing before the ALJ), and he does not argue that he presented to the ALJ any evidence regarding the need for a cane.

D

Harrison posits that the ALJ misstated Harrison's hearing testimony regarding the daily activities he is able to perform.  He argues that he is not, as the ALJ concluded, able to "take care of his personal needs independently of others, prepare simple meals, perform light chores, drive, go out alone, and shop."  *Id.*  To the contrary, Harrison testified that he lives with his mother; has no hobbies or pets, does not do the dishes, mop, sweep, or take out the trash; does not leave the house for ballgames or recreation or to attend his children's school functions; his clothes are purchased by his children's mother; his own mother shops for his food; and he does not attend Veterans of Foreign Wars meetings.  Harrison argues that, even if the ALJ had correctly recounted Harrison's daily activities, such things as preparing simple meals, doing "light chores," going out alone, or doing occasional shopping simply cannot support an inference that the claimant can sustain full-time work on a regular and continuing basis.

---

[4]Harrison contends that he was prescribed a bariatric cane by the VA.  He does not argue or present evidence that he "required" the cane to ambulate or that he actually used the cane he was prescribed.

In his disability application, Harrison stated that he was able to prepare simple meals, drive a car, shop for food, and go out alone.  This constitutes substantial evidence supporting the ALJ's findings regarding Harrison's daily activities.  To the extent Harrison argues that the ALJ cannot rely on evidence that Harrison was able to perform certain daily activities to support an inference that he can sustain full-time work on a regular and continuing basis, Harrison is mistaken on the law.  It is appropriate for the ALJ to consider the claimant's daily activities when deciding the claimant's disability status.  *Leggett*, 67 F.3d at 565 n.12.  In any event, the ALJ did not rely solely on evidence of Harrison's daily activities in formulating Harrison's RFC; he relied on this evidence as one factor in addition to the medical and other evidence in the record.

E

Finally, Harrison argues that the ALJ's statement that "[i]maging studies of his back, neck, knees, and feet have not revealed any significant deficits," R. 17, overlooks so much that one is left to conclude either that the term "significant deficits" is "being asked to carry more freight in the ALJ's sentence than it can possibly bear, consistent with meaningful review," or it is a sign that the ALJ did not carefully study the record.  P. Br. 26.  The Commissioner responds that the evidence Harrison cites to demonstrate that the ALJ committed error actually supports the ALJ's finding that Harrison's degenerative joint disease, degenerative disc disease, and chronic feet pain were severe impairments and that Harrison does not present objective medical evidence demonstrating that he was more restricted than the ALJ stated in the RFC.

- 21 -

Substantial evidence supports the ALJ's conclusion that imaging studies have not revealed significant deficits. In formulating the RFC, the ALJ cited medical records from June 2010 that state "[X]-rays shot previously really show fairly normal knees" and "MRI of his left knee is fairly unremarkable." R. 266. X-rays from April 2011 revealed "minimal degenerative hypertrophy and tiny spur formation in the patellofemoral compartment of the left knee," and "normal lumbosacral spine series." *Id.* at 391. Although an April 2011 MRI of Harrison's lumbar spine showed changes suggestive of bony canal stenosis at L3-4 and L4-5 with partial compression of the thecal sac and an MRI of his cervical spine showed multi-leveled degenerative disc disease, a November 2011 X-ray of Harrison's lumbar spine showed "no acute chronic compressions" and "unremarkable" alignment. *Id.* at 636. November 2011 X-rays of his left foot were unremarkable.

Even if substantial evidence does not support the ALJ's finding that "[i]maging studies of his back, neck, knees, and feet have not revealed any significant deficits," Harrison has not shown that he was prejudiced by this error. As explained above, the ALJ's RFC determination takes into account the limitations Harrison requires as a result of his knee, back, and feet impairments by limiting Harrison to "light work," walking or standing for 2 hours in an 8-hour workday, sitting for 6 hours in an 8-hour workday, occasional climbing of stairs and ramps, and no climbing of ladders, ropes, or scaffolds. Accordingly, any error the ALJ made in describing the imaging studies as not revealing "significant deficits" is harmless.

F

Harrison argues that "[t]he ALJ made enough errors in assessing Mr. Harrison's credibility to warrant remand, even if he had made no others." P. Br. 20. The court disagrees. As noted, "[c]redibility determinations are generally the province of the ALJ, and his credibility evaluations are entitled to deference." *McGowan*, 2009 WL 2614487, at *4. Harrison has not shown that any of the errors the ALJ allegedly made in formulating his RFC determination were prejudicial. Accordingly, assuming *arguendo* that the ALJ erred and that the errors were relevant to the ALJ's determination of Harrison's credibility, the court will not overturn the ALJ's credibility determination because the challenged errors were harmless.

VI

Finally, the court turns to Harrison's contention that the ALJ erred in failing to properly evaluate the evidence that Harrison experiences daytime sleepiness and diminished mental functioning due to the side effects of his medications.

A

Harrison's argument appears to be two-fold: first, that the ALJ erred in formulating the RFC by failing to take into account the side effects he experiences as a result of his pain medication; and, second, that the ALJ erred in finding that his subjective testimony regarding the side effects of his medication was not credible. Harrison maintains that, in making the RFC determination, the ALJ was required to account for all of the effects of treatment, including side effects of medication, and that in assessing the claimant's credibility, the ALJ

- 23 -

was required to consider the type, dosage, effectiveness, and side effects of any medications he takes or has taken to alleviate pain or other symptoms. Harrison argues that the ALJ failed to comply with these requirements because the RFC finding assesses no mental limitations of any kind, fails to provide Harrison with a work environment free of dangerous machinery or motor vehicles (an accommodation routinely given to claimants who rely on narcotic pain relief), and includes no acknowledgment that Harrison alleged that his medications significantly impair his mental functioning. He cites his hearing testimony that his medications make him "sleepy all the time" and "very, very tired," such that he "just can't function," R. 53; that he described these same side effects on a social security questionnaire; and that his complaints to his doctors about "excessive daytime sleepiness at times" and "doz[ing] off 5-10 min 3-4 times scattered throughout [] the day into evening hours" are documented in treatment records, *id.* at 504 (brackets omitted). Harrison contends that the ALJ's failure to evaluate treatment side effects in a reviewable manner is reversible error, and that the absence of a meaningful evaluation of side effects justifies remand where, as here, there is evidence permitting a finding that he experiences side effects at a level that would potentially interfere with success at some jobs.

The Commissioner responds that, despite Harrison's testimony to the contrary, the objective medical evidence demonstrates that he was "alert and oriented" and "able to follow complex directions." D. Br. 9. She cites the ALJ's conclusion that Harrison's statements concerning the intensity, persistence, and limiting effects of his symptoms diminished his capacity for basic work activity only to the extent consistent with the objective medical

evidence, and she argues that the objective evidence contradicts Harrison's claim that he was sleepy all of the time to the point where he could not function. The Commissioner also posits that the ALJ gave great weight to the state agency medical consultants' evaluations of Harrison's physical and mental impairments regarding pain and other symptoms, and that no treating physician or state agency medical consultants indicated that Harrison had any mental limitations affecting his ability to work. In sum, the Commissioner argues that, when the ALJ's credibility analysis is viewed in full context, substantial evidence supports the credibility finding as it relates to Harrison's claimed side effects from his pain medication.

B

"'[I]f an individual's medical treatment [which would include drug therapy] significantly interrupts the ability to perform a normal, eight-hour work day, then the ALJ must determine whether the effect of treatment precludes the claimant from engaging in gainful activity.'" *McNeil v. Astrue*, 2009 WL 890553, at *12 (S.D. Tex. Mar. 31, 2009) (alterations in original) (quoting *Francois v. Comm'r of Soc. Sec.*, 158 F.Supp.2d 748, 770 (E.D. La. 2001)). Further, under the regulations, the Commissioner is required to consider the "'type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his] pain or other symptoms.'" *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999) (all but last alteration in original) (quoting 20 C.F.R. § 404.1529(c)(3)(iv)). Thus "an ALJ commits error by failing to evaluate side effects or symptoms allegedly caused by medication and their impact on the claimant's RFC." *Michlitsch v. Colvin*, 2013 WL 1880399, at *6 (N.D. Tex. Apr. 18, 2013) (Cureton, J.) (citing

- 25 -

*Brown v. Barnhart*, 285 F.Supp.2d 919, 935 (S.D. Tex. 2003); *Bassett v. Astrue*, 2010 WL 2891149, at *13 (N.D. Tex. June 25, 2010) (Cureton, J.)), *rec. adopted* , 2013 WL 1880768 (N.D. Tex. May 6, 2013) (McBryde, J.).

Harrison cites subjective evidence that indicates that his ability to function at work was impaired by the side effects of his medication.  For example, in a social security questionnaire completed in March 2011, Harrison indicated that his medications caused side effects, including "dizziness," and "drowsiness."  R. 219.  Records from a May 5, 2011 "sleep medicine consult" indicated the following daytime symptoms:  "excessive daytime sleepiness at times, has fallen asleep during inactive times, but denies falling asleep while driving.  Nap: dozes off 5-10 min 3-4 times scattered throughout [] the day into evening hours."  *Id.* at 503-04.  Finally, during the hearing before the ALJ, when Harrison was questioned about the side effects of his medications, he testified that his medications "make[] [him] very, very sleepy."  *Id.* at 52.  He also testified that "they just affect[] me where I just can't function, where I'm just sleepy all the time, very, very tired" and that he experiences a feeling of grogginess or sleepiness "[p]retty much all during the day."  *Id.* at 53.  Harrison explained that he had not taken his medication the morning of the hearing so that he would be more alert, and he averred that his biggest problem working 8 hours a day, 5 days per week, was that his medication would make him "too tired to do anything."  *Id.* at 54.  He explained, "I mean, I can't function.  I won't be coherent to do whatever job function they would have me doing, they may have me doing."  *Id.* at 54.

The ALJ made no specific finding in his RFC determination or elsewhere in his

decision regarding the claimed side effects of Harrison's pain medication. Although he found that Harrison's "statements concerning the intensity, persistence and limiting effects of [the alleged symptoms] have been determined to diminish the capacity for basic work activities only to the extent to which they can reasonably be accepted as consistent with the objective medical and other evidence," *id.* at 18, the ALJ did not give any indication that he considered Harrison's subjective evidence that his pain medication caused daytime sleepiness and drowsiness and diminished mental functioning. Courts have repeatedly indicated that "the ALJ is required to consider the side effects of a claimant's medications and that failure to do so constitutes error." *Clark v. Colvin*, 2013 WL 5967050, at *18 (S.D. Tex. Nov. 6, 2013) (citing *Loza v. Apfel*, 219 F.3d 378, 397 (5th Cir. 2000); 20 C.F.R. 404.1529(c)(3)(iv), 416.929(c)(3)(iv)); *see also Michlitsch*, 2013 WL 1880399, at *6. Without a specific finding regarding Harrison's subjective complaints about sleepiness and drowsiness, the court cannot determine whether the ALJ properly considered the side effects of Harrison's pain medication in making his RFC determination. Additionally, although credibility determinations are generally left to the ALJ, and the court will not overturn such a determination unless it is impermissibly vague or unsupported by the record, *see McGowan*, 2009 WL 2614487, at *4, the ALJ's failure to mention the claimed side effects of Harrison's pain medications makes it impossible to discern whether the ALJ considered Harrison's subjective evidence of daytime sleepiness and drowsiness and diminished mental functioning and found this evidence to be not credible, or simply failed to consider this evidence

altogether.[5]

## C

Even though the ALJ committed procedural error by failing to consider the side effects of Harrison's medications, the court will not reverse unless Harrison shows that he was prejudiced as a result of the ALJ's procedural error. *See Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. Unit A Sept. 1981) (per curiam). In a social security benefits case, an individual establishes prejudice by showing that, absent the violation, a different result might have been reached. *See Ripley*, 67 F.3d at 557. In other words, the ALJ's procedural improprieties will constitute a basis for remand only if they would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (per curiam). But "applying harmless error review . . . does not require the court to substitute its judgment of the facts for the ALJ's, speculate on what the ALJ could have done or would do on remand, or accept a *post hoc* rationalization." *Benton v. Astrue*, 2012 WL 5451819, at *8 (N.D. Tex. Nov. 8, 2012) (Fitzwater, C.J.).

Harrison has pointed to subjective evidence that, as a side effect of his pain

---

[5]The Commissioner argues that the objective evidence contradicts Harrison's claim that he was sleepy all of the time to the point where he could not function. It is true that Harrison's treating physicians frequently noted that he was "alert" and "oriented." Dr. Chen noted during an April 28, 2011 consultative examination that Harrison was "[a]wake, alert and oriented to time, person and place" and appeared to have "good memory." R. 390. None of these records, however, would preclude the ALJ from finding that Harrison's subjective complaints of daytime sleepiness were credible. Although Harrison appears to have been alert and oriented during his doctor visits, none of the medical records indicates that he did not, in fact, experience sleepiness and drowsiness as a side effect of his pain medication.

medication, he experienced daytime sleepiness and drowsiness that would interfere with his ability to work in a full-time job.  Had the ALJ considered this evidence and found it to be credible, such finding could affect Harrison's RFC and, ultimately, the ALJ's decision regarding whether Harrison was disabled as defined under the Act.  Accordingly, Harrison's subjective evidence of daytime sleepiness and drowsiness that would interfere with his ability to work prevents the court from concluding that the ALJ's error in failing to consider this evidence is harmless.

Because the court is unable to determine from the record whether the ALJ considered whether Harrison's subjective evidence of daytime sleepiness and drowsiness is credible, and, if so, whether the ALJ took this evidence into account in formulating Harrison's RFC, and because consideration of this evidence could change the outcome in this case, the court vacates the Commissioner's decision in part and remands this matter for further proceedings consistent with this memorandum opinion.

\*   \*   \*

Accordingly, for the reasons explained, the Commissioner's decision is affirmed in part and vacated in part and remanded for further proceedings consistent with this memorandum opinion.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.

March 12, 2014.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

- 29 -